Browns is the judge. political. 8th turned keen my name is or or and I represent Mister  speak on behalf of Brian Melvin Brandenburg. Reserved 3 minutes for rebuttal. The jury denied the opportunity to determine whether the e-mails that Mister Brandenburg sent. We're true threats protected by the First Amendment. Because the judge did not have the  because the diminished capacity instruction was not given. If that instruction was given the jury would have been able to look at and consider. The several pieces of evidence that could be an indication of Mister Brandenburg's diminished capacity. He was  taking marijuana and magic mushrooms during the time he sent the e-mails. He was emotionally distraught. He was going through a divorce was. Supposedly going to lose everything. Also another very very important point about why Mister Brandenburg could have not been. Totally. Have his wits about him was that when the federal FBI agent interviewed him on May 6th. He told the FBI agent. My family. Unbeknownst to me. And without my consent. Had brain surgery on me and removed my heart. If that was true. I don't think the interview would have been taking place. Mister Brandenburg would not have been there that in itself should at least the district court to think. There must be something wrong with Mister Brandenburg. Now whether it is the. Emotional distress or was it the marijuana or the magic mushrooms. There was enough evidence at least to have the diminished capacity instruction given. Backing up as far as the FBI interview that was evidence that was there. The district court. Was asked by defense counsel at trial. The jury decide that question. The district your client say that he could function and do all kinds of complicated work while he was intoxicated. That's correct. He did see that. And he did see that he was writing a 200 page book. And he could also program. Sort of a lot of complex things. But all that goes to show is that is evidence and the testimony could be weak inconsistent or may even have doubtful credibility. But that does not eliminate the evidence. To warrant a diminished capacity instruction. The other thing is that Mister Brandenburg as you may be able to gather from the excerpts of record is that he is a very intelligent self-made individual. But at the same time, he does have very strong opinions and views in terms of what his worth and his capabilities are which may have been part of the reason why when he testifies, you know, he says, yes, you know, I was taking magic mushrooms. You know, my capacity was diminished because what I thought and what I did was diminished. And that's in the record. Can I ask you to move to the obstruction of justice enhancement? So I have a question about exactly what your argument is on this. Are you saying that the court never made a finding of willfully lying on the stand or that somehow the finding that was made was flawed. Our position is that initially the district court could not find willful. The government convinced the district court that because the jury found willful, you find willful to the district court. And the district court did say that essentially it was the jury who found willful, so I found willful. So what's a little bit confusing here is that what the jury found was that he willfully threatened, but what the court needed to find was that he willfully lied on the stand, right? Yes. And the district court didn't make that independent finding that he willfully lied on the stand. Okay, but you think that the    perjury? I don't recall the district court ever saying the word perjury. Okay, but the judge knew that one of the findings that needed to be made to impose the enhancement was willfulness. Yes, it was willfulness. And that's what the district court found based upon what the jury's verdict was as compared to the district court making an independent finding. So I didn't see an argument really in your brief that the judge misunderstood what type of willfulness was at issue. I'm kind of asking you about this because I think the jury was asked a different question about willfulness than what the judge needed to find for the enhancement. But I don't think you argued the judge didn't even understand that the willfulness was willfulness about lying. That is correct. Our only argument in the opening brief as well as the reply was related to the district court relying upon the district court's jury's verdict as compared to making an independent finding. And what case do you have that says that the judge, are you saying it's not appropriate for the judge to even take into account what the jury found? No, the district court can take into account what the jury found, but the district court would still have to make an independent finding that there was willful. And what do you think independent means in that  The district court would have to state, okay, based upon the jury verdict as well as my review of the evidence as I sat through the trial, I make the stating, I make the independent finding that Mr. Brandenburg was willful. And that also relates to another point, which is a constitutional issue. The issue regarding willful relates to obstruction of justice as well as to acceptance of responsibility. Now, in this case, Mr. Brandenburg exercised his First Amendment right because the question was whether it was a true threat or was it his First   He did not send those e-mails. If you find that whenever a verdict is rendered against an individual, that it's a true threat as compared to a First Amendment right, when the First Amendment right is advanced, it creates a very chilling effect upon anyone ever wanting to go to trial. Because in his mind, Mr. Brandenburg believed that the e-mails that he was sending was based upon his First Amendment right and not a true threat. Now, it could very well be that it was because of his diminished capacity, because of how he views himself or for other reasons. But the point is, it's a First Amendment right as compared to other kinds of situations. I want to get back to your answer to my question about independent. Are you saying that the problem... What do you think the judge did wrong here on this willfulness issue? In regards to the willfulness, the judge relied upon the jury's verdict to determine willful rather than stating, I looked at all the evidence, I looked at the jury verdict, I independently came to the conclusion that Mr. Brandenburg was willful and therefore the three parts are met and therefore the obstruction of justice enhancement would be applicable. It seems to me that your basic objection is that the judge didn't tie it together in a nice package at the end. My question is, the judge laid out the correct requirement, meaning an independent judicial finding, but why isn't the colloquy and the fact that the objection had focused on the jury verdict and then, of course, that was the discussion. Why isn't the ultimate conclusion taken as a whole sufficient here? Our position is that initially when the judge first came into the sentencing hearing, she did say that she had a question regarding willfulness, and it was the government who sort of convinced the judge that there was willful based upon the jury's verdict. But the judge also said coming in, I need to find these three things, right? That's correct, and that was correct. Those three items were the things that the sentencing court needed to find. I also think, though, that at R21, I don't know if it was you or someone else, but whoever Mr. Brandenburg's lawyer argued on this willfulness issue, the jury did not find that Mr. Brandenburg perjured himself. So the objection on willfulness to the judge was based on what the jury did, and that was the defense counsel saying that. So I'm wondering if whatever your issue about independent finding is was invited error. Well, as far as the defense trial attorney, yes, you know, there could have been the differentiation between whether there was perjury or whether there was a willful in regards to based upon the jury instruction. I think, well, I think let's say we all agree with you that the judge was not bound by the jury verdict and needed to make an independent finding apart from the jury that there was the 3 elements including willfulness. Part of the problem is the transcript shows that lawyers for both the government and the defendant. Argued only about what the jury found or didn't found and no one said.    To the judge, it doesn't matter what the jury found because you need to look at the evidence independently and make your own finding and even if the jury said it was willful. It doesn't matter judge you can make a different finding for the purpose of this case. And I think the struggle is in the absence of anyone making that argument to the judge now reviewing what happened below even if we agree that the judge needed to make an independent was that essentially was that objection forfeited or waived or are we on plain air review and we can't reverse on that ground.   We would argue that that argument is not maybe the specific rationale or the argument as to why the obstruction of justice should or should not have been. Recognize. That may not have been clearly articulated at the sentencing level rather than in our briefs as we all know. You know we have more time to think about it and so you have more time to make additional arguments. So if it wasn't way but it was not preserved in a way that it's being argued for the first time on appeal. This independent. Lack of an independent finding. Then we would be on plain air review is that correct. I would slightly disagree around because the point is that we did object to the obstruction of justice as to whether the reason or the rationale for that. The independent finding was not made by the district you think that objection even though you didn't maybe articulate it perfectly was preserved so that we're on     At the Novo review.  At the at the sentencing. It was preserved. It was better articulated in the in the briefs just better not but it wasn't not at all below is your argument. Yes, Your Honor. What I'm is ticking by and I wanted to know if we could shift then to the other enhancement that has to do the disruption on the court staff. So I wanted to know if you can give us in your best articulation. What would be the threshold for when the security staff would need to go beyond its normal duties so that you could impose the substantial disruption. It would be the delivery of services or the function that would have to be substantially affected rather than behind the scenes. In this case, the court security personnel. Having to do. Additional security check and also. Further reviewing the security cameras. So our position is that. For the district court of Utah family court. Their delivery of services and their function was to serve the. Individuals that are going through a divorce and nothing changed according to the record as far as the delivery of services to those clients or those parties. And and therefore our argument was that. It was no substantial disruption of governmental services or function because the Utah family court operations were not affected. Now the security personnel did have to do additional things, but that's what they required to do. They're required to protect the  Whatever risks or threats are made, their job is to protect the court. So. That kind of begs the question, I guess, because, of course, you need to protect the court. You now have these threats called in or at least surface not just at the court, but in other locations. So at what point. Does protecting the court the court go beyond what you might call the everyday duties. Because you're not normally reviewing all the security cameras. You're not making those judgments. There are two parts of that, Your Honor. As far as the delivery of services or functions, that's what the public sees the  And then the substantial part is. Related to let's see, for instance, the security personnel. How much effort did they have to do to protect the courts. And I've been looking at the case law about this enhancement as well as the related guideline about variances that is not an issue in this case, but also uses that phrase governmental function. And it seems that. There's an argument that it's about governmental function really has to be viewed at sort of an organizational level. I think that's your argument that we're not looking at the discrete. You know part of the court being court security, but we're looking at the court function and then that there's no evidence that that was disrupted. Yes, because the district courts from the district courts function was to serve the parties and that was not affected. But yes, security personnel they did do a lot of things so yes, there was substantial, but it didn't affect the services or function function of the court. Yes, Your Honor. You're and I do notice that I still give you 2 minutes rebuttal. Let's hear from the government though. Thank you. Thank you, Your Honor. Good morning, Your Honors. Keopuni Akina on behalf of the United States. So I want to address the obstruction of justice argument first and I agree with the points that Your Honors made just a few minutes ago. The judge, the district judge did come out and did know and state what the appropriate standard was. I don't think there's a question that in the district courts mind the district court knew what had to be done and their specific language that's cited in the briefs about willfulness specifically and how that the judge couldn't reach that on their own and specifically with reference to the jury and I think the observation about how the genesis of this entire conversation at sentencing began with defense counsel there referencing how the jury didn't find willfulness for the purposes of this. Well, it was really the judge who said, came out the door saying I'm having trouble finding willfulness. Correct. I think prior to that, it's on page 21 of the excerpts of record, it begins with the judge asking trial counsel for the defendant, what are your objections and that's how it starts off. I agree. The judge also initially, that's what the judge also said. I mean, I will cut to the  What troubles me is that because of the Fifth Amendment privilege, that is partly why we require judges to make independent findings and to not be bound by how the jury verdict. And then here, the whole colloquy during the sentencing hearing was about what the jury found. And it seems to me then the judge is saying, okay, it was reasonable for the jury. A reasonable juror could find willfulness. Therefore, I find willfulness. And I don't, under our case law, right, the judge wasn't actually, not only was not bound by the jury verdict, but is required to make their own independent finding of willfulness regardless of what the jury found in order to protect the Fifth Amendment. Right. So I just don't see anything in the transcript where the judge, either the lawyers or the judge acknowledge that it, in some sense, doesn't matter what the jury found. What matters is the judge's own view of the evidence. Certainly. So I would agree that that specific, that standard wasn't articulated at the sentencing. That doesn't mean that the appropriate finding wasn't made. And after the district judge says, like, OK, for the reasons that the government made, I'm convinced. That's not where the conversation stops. And I think if that's where the conversation had stopped and the judge had completely hung her hat on the jury's verdict, that would be a problem. But that's not what happened because the judge then continued and says, you know, the court notes these things. And those are things that the district judge had observed at trial. Those things included the fact that the defendant took the stand. He testified. He testified to the reasons why he sent those threats. He didn't intend to threaten people. He didn't believe they'd be taken as a threat and that he wanted to raise eyebrows. And that reference to wanting to raise eyebrows that the district court made, that's a reference to the defendant's testimony at trial. And if you look on page 107 of the excerpts of record, you know, that's where it comes from. And the question prior to that, defendant is being asked by his counsel. I believe it's a direct examination. You know, what was your intent in all of this? And he explains his theory of defense, which is, you know, I wanted to attract attention. You know, I wanted to, I sent these emails. I wanted people to take notice of that to get attention to my story. And he says, I wanted to raise eyebrows. So it's within this context. You know, that's what the district judge, well, she didn't explicitly say that. You know, that's what it's referencing. You're talking about a reference to what happened at trial. It's this reference to the evidence at trial that was very clear throughout from openings, his testimony, closings, even now in appeal. You know, I did not intend to threaten. I sent these emails to get attention, just not that type of attention. And so for the judge to then recognize that, OK, the jury also rejected what you said at  And I'll note that here, falsity and materiality, the other two elements for perjury, that's not being challenged on  And so taking in context, right, it may not have been packaged as perfectly as we would like. But all the elements are there sufficient to sustain this enhancement. And that's what was talked about in one of the cases that defendant cited Mons on balance. Well, and judge McEwen, you may be familiar with it. I believe you're on that panel. But in that case, the obstruction enhancement was found not to be appropriate because the court only relied on the jury's verdict. But the court also explained in that case that we have accepted perfunctory findings as long as they are clearly supported by the record. I've gone back and I've looked at the transcript and the problem I see is you said the court noted that the defendant testified and that he wanted to quote unquote raise eyebrows. And then she says, but the jury found otherwise. So I think so she was referencing his testimony that he didn't intend to threaten. Then she says the jury found otherwise. And I think the reasonable  defendant's knowledge or could conclude. That each of these requirements were met and therefore. Rule. Right. So there's there's nothing to me. There's nothing there where that it does read to me at least the best reading that I can think of is that the judge was basing the decision solely on the jury's view of the evidence. Well, I would respectfully disagree. I know I know the judge no disagreement with the judge said that. But it's taken within the greater context of the judge pointed me to something which I don't think shows the independent finding. Is there anything else that you can show me. So I think that is evidence of an independent finding. I think that the case that defense side of that Monson balance while the case that talks about how perfunctory findings are sufficient as long as it's supported by the record clearly supported that when you look at the defense testimony his admissions at trial that he intended. He admits that he sent threatening that he used threatening language. He admits that he took extreme measures. He admitted that he sent these e-mails to express anger. Right. And then there are inconsistencies in his own testimony. For example, I'll give one. He claims that this was for click bait but on cross examination when he's questioned about the e-mails and the subject lines, it's not click bait. And then the greater weight of the trial evidence, 6 witnesses who received these e-mails, they all testify. I'm not arguing the judge couldn't find it. I'm just asking whether they did independently. Evidence in the sentencing transcript is there that the judge independently found that. Right. So unfortunately, those words are never uttered. Right. I think taken in context, especially when the judge comes in to that hearing knowing and saying I have to make these findings sufficient for this enhancement. And then at the end of it, applying that enhancement, I think inherent in that is the judge exercising her discretion in that scenario and making that finding. Even though the word isn't said. Just because time is running, I did have some questions about the substantial disruption enhancement. So if I understand the record correctly, actually, the PSR did not apply that  It was the government's objection to apply it. And the PSR actually said, you know, we don't think it applies in response to the objection because there was no disruption of a governmental function. And your argument was that the disruption to the security in and by itself qualifies as a disruption to government function. And you didn't rely on anything other than the disruption to the security at the courthouse. Is all that correct? That's correct.  And then. As far as I can tell. In the universe of applicable case law, unless I'm missing something because it's always hard to know you've exhausted, but I cannot find a case where. There was application of this enhancement based solely. On and enhanced security response.  So. As far as I can tell. No court has actually addressed whether. This factual scenario in which there was a security response. That was admittedly beyond the norm, right, but still a security spot so security saying there's a threat we're going to. Look for it. But the actual service of the government institution that we're talking about are the function here. The function of the court is not to provide court security. It's the function as a court and court security supports that function. Do you know of any case in which a court has addressed whether. These facts that counts as substantial disruption to a government function. So not on these facts where where you're talking specifically about court security. No, I guess security of some other broader organization or institution or facility. So I found plenty of cases where that was among the facts. But not where court squarely address the question of when that's the only type of disruption whether that counts. Well, I would direct the court to the Snipes case that we cited in our brief. It's out of the 11th Circuit. I would also look at the Dudley case that's cited by the defendant. The Snipes case. I'll start with that. That was an 875 C case. So there are threats that are communicated through the Internet that the defendant was going to shoot a member of the Florida National Guard while they were at drill. And in response to that with the factors that are discussed in that court decision. Those are all I think those are all reactive steps that were taken security measures that were taken in this case. And I think importantly to I think to your honors question in that case there was no threat assessment. So the drills that that were threatened. Those were not canceled. Those went on as planned. But what was focused on were the security measures that were taken in the interim. This took place over the course of 2 days. Our case it's over 3 days. But 2 days they added 30 additional National Guard members to checkpoints. That's something that they're already doing. But they just added more people to these checkpoints. There was a threat assessment meeting that was called similar to this case. So there's a threat working group that was formulated. There was a little bit of a delay that they noted in entry times for National Guard members going through these checkpoints. But ultimately the drills that they were going to that went as planned that was not disrupted. And then additionally to that they noted that they pulled state law enforcement and diverted them as well from their duties to assist in these matters. In the Dudley case that was a case where there was a fake anthrax letter that was mailed to a judge's chambers. And that was a very short time duration. I think within a day it was all resolved. But 2 staff were quarantined. 2 judges were sent home for a few hours while this was  There were law enforcement who were diverted from their regular duties from their other duties to provide security for those judges during this time period. And I guess in that case it's not a perfect example because there's some unpublished dispositions. There's a couple of the cases out of the other circuits. So when you even look at the plain language of the substantial disruption of a government function, here it seems to me that we don't have we don't have the shutdown. We don't have the      redeployment of additional people outside the courthouse. What is it in your view, what facts would suggest that there was a substantial disruption? Obviously there's some disruption, no doubt about it. What makes it substantial in your view? Certainly. I think the fact that they didn't just divert some available deputies in the courthouse to address the  They diverted all available deputies. I think that came out to about half, maybe a little bit over than half of their 30 something deputies on staff. Their chief of security, Mr. Palmer, testified. In a nutshell, he said he went through all the steps that they took, but he characterized it at the end, you know, this was not business as normal. You know, no one breaks are all being canceled. People are being thrown into this. This is basically their sole focus. I mean, the trouble I have is right, is court security. I mean, any threat that is at all credible or result any I mean, we don't get threats every day. I would say any threat would cause security to not conduct business as usual. And there's some right now when it's I know we don't have the inherent in the offense language for this particular enhancement. But there does seem to be some inherent in the offense of threatening. Right. There's going to be a security response. And so it's a little bit troubling to say that, you know, a security response in and by itself that where there's no other impact on the organizational function is going to justify a significant enhancement. And I just don't see, you know, a controlling authority. Snipes case is unpublished. I don't see controlling authority or you know, even precedential persuasive authority that has addressed this issue of what level or how should we consider government function for the purpose of this enhancement. So I guess it to me, it seems like an open question of law that we have to define in the first place. And I guess as a matter of first principle, what would be that the interpretive argument for saying it should include. Even just as security response even adjusted. Security response that causes that officers to investigate the threat essentially in a way that's outside their everyday duties that in and of itself should qualify as disruption to government function. Certainly so I mean, the part of the problem, right, is there's no bright line rule, right? There's no rule that says X number of personnel need to be tasked with this thing. I would go back to the wording in the guidelines. You know, there's an or there. You know, functions or services. So it's not just services, public facing, that typical thought, it's functions. You know, what is our function? And if that function is being disrupted, the case law, they talk about diversion. I guess at what level should we say the court function or should we say the court security function?  So again, going back, it's governmental, right? So it could mean a number of  And unfortunately, it's not defined. From my viewpoint, I see that as it could mean a number of things. You know, it could be the court's function, its ability to serve the public, but it could also be the function of the staff within the courthouse, right? Because that affects things. If you are diverting all available personnel to address one threat, then you have no margin for anything else that could come up. I would concede, you know, that if it was just the internal court operations, but it was something beyond the security, I think that would be an easier case for you, right? So, but that's not this. This is just the security officers, correct? Correct. And I would go, I mean, we sort of noted that in our brief that there's no real definition. You know, what is a substantial disruption? I couldn't find any within this circuit, at least. And the cases that I cite from outside of the circuit, there seem to be this notion that well, because it's undefined, there should be some deference that's given to the district judge at sentencing. And looking here, where the standard at the very highest should be abuse of discretion, you know, I think there needs to be some deference given to the  I agree with you on the magnitude issue, because that's been something that a lot of courts have struggled with is, you know, is the magnitude of disruption enough? But that hasn't, as far as I can tell, no court has really wrestled with what has to be impacted, right? And that's because most of the cases, if not all of them, involve something besides the security response. So it just hasn't, as far as the question, hasn't been forced, essentially, by the facts as they are in this case. And then we have the PSR saying we don't think this is enough, you know, and you're objecting and I think that puts the legal question of what counts as government function. I agree with that. I agree that, yeah, there's no clear controlling case law. Can I ask you whether you think, if we were to try to answer this question, whether it matters that this crime, the underlying crime for which this sentence was imposed, doesn't have a government element? So, like, this crime could be violated just by threatening your neighbor. It happens that he threatened the government, and so then we have possibly government disruption, but it comes in in the sentencing and not in the crime itself. Like, would it be a different kind of application of the enhancement if the crime was threatening a judge? I mean, I think it would certainly, I mean, it would come out more at trial, right, because that would be a part of the element of the crime. I don't know that it affects the applicability of the enhancement when it comes time for sentencing, though, because at the end of the day, you're still looking at who was actually affected by the defendant's actions. If I recall correctly, it could also apply to business. It could, yes. So it would have to be, then it would have to be just substantial disruption of the business function. Right. I think the wording is public, governmental, or business. Or business. Functions or services. So here, the other, the combination of whether it's singleton and all these other cases say a couple of things that you might divine. One, there needs to be something that's quantifiable, and in doing that, they talk about what's the time and duration, were any additional funds expended, what was the impact in the organization. So those are some of the, I guess, factors. And here, as I understand it, the key factors would be that they really had to deploy everybody sort of all hands on deck to trying to make the protection comprehensive, correct? I would agree with that. And so in that regard, there definitely was a disruption, but was it substantial in the sense that that's what all those people out there are supposed to be doing for all of us, whether it's the spectators or the judges, is making sure that the courthouse is safe. So I'm wondering, do you have any views on when you get above the threshold of substantial? Trying to define what substantial means. I don't think I have a bright line suggestion, unfortunately, for the panel. I think it's one of those things that's going to be case by case. You know it when you see it, and if it's not, it's not. The other thing I'll add, you did mention one of the other factors, time and duration. This one was three days. The cases that are cited are similar in length or shorter, two days to hours. So I think that would weigh in favor of the disruption and just the duration that this went on for. And Judge Song, to respond to what you're asking earlier, I mean, the counters there no being any precedential case that guides us here, is that there's also no case that says it can't be. I would say it seems to me to be an open question. So it seems to me you could have disruption. It could be a substantial disruption. But it may or may not be to a government function in this case. Because the debate, really, as far as I understand it between you and opposing counsel, is whether the court security response, that seems as a factual matter, undisputed that that was a large response, unusual response. But the question is whether cutting off court security from the overall entity of the court, whether we should look at it, whether the government function should be defined as the security or as the court as a whole. I guess, to me, that's really the legal question that I'm struggling with. And as far as I can tell, there's no court case that addresses that, that says either it is or it is not. Correct. Do you think we're on plain error review for this issue? I do, only because the argument raised on appeal is different. The argument raised here is that it wasn't a substantial disruption. I know here during arguments, I think counsel reverted back to what was argued at sentencing, which is that it has to deal with something that's public facing. That's what was argued, that for this to even qualify, the function or service has to be public facing. That wasn't, on my reading, I didn't see that raised in this appeal, which is why we argued that it should be plain error here. Part of the problem I have is because it was really the government's objection to get the enhancement applied in the first place. And so all the colloquy with the judge was really about the government's arguments for why it should apply. And then the judge says, OK. And the defense counsel says, well, I still disagree that it should apply. I mean, I don't, it's hard for me to find, you know, fault, I mean, with exactly what defense counsel was arguing below when it was really all, most of the argument was about the government trying to say this should count. Does that make sense? I understand your Honor's point. When we're talking about preservation of an argument below, I mean, we're supposed to view preservation liberally. It's not supposed to be this standard. And it seems to me that it was really the government who was saying the whole time, you know, please do apply this enhancement. We're objecting to the absence of this enhancement. I think that's a fair point,  And even I think as we noted in our brief, even under abuse of discretion under either standard, whichever is applied, I think you come out with the same conclusion here, especially in, you know, in light of the fact that there is a lack of controlling precedent here. I mean, there has to be some deference given to the findings made by the district court. And here, the district court did make findings about how this was a disruption, about how, you know, what, you know, the security, they're typically tasked with security at the front door and in courtrooms. And the judge said, you know, but this was totally different, a totally different requirement. I could defer if I agreed legally, right, that government function includes, you know, should be viewed at the more discreet level of court security. And honestly, I don't, I just don't know whether that's the proper interpretation of the enhancement at this point as a matter of law. Understood, Your Honor. I would just know that that distinction is not made in the sentencing guidelines. It's broad, and I think it's broad for a reason, so that the judges, the trial judges can apply it to certain sets of circumstances. I'll give extra time for rebuttal, but I have one other question that's on a different topic. So your opposing counsel started on this diminished capacity thing by saying something that I admit I don't quite remember about the surgery, about the heart or something. Do you have a response to that? A couple of responses. One, that evidence was put forward before the jury. I think opposing counsel started off by saying that, you know, there's certain evidence that wasn't provided to the jury, and going through the transcripts, that's not the case. In fact, the trial judge gave the defendant two chances to lay a foundation for this instruction to be established. One outside the presence of the jury, and then a second time at trial. And there was no limitation that was put on what the defendant could or could not testify about. So, and on top of that, you know, this was put in front of  I understood your argument in your brief to be there was no evidence of diminished capacity, so there didn't need to be this instruction. But this weird thing about I'm dead or something, it does sort of sound like evidence of diminished capacity. You know, I didn't take it that way. And that's certainly not what was argued at the trial level that, you know, during those two opportunities, especially the one outside the presence of the jury, that was not raised at any point, you know, as a basis for the diminished capacity instruction. And even, you know, I understand that it came out and that it was evidence generally at trial. But going back to the case law, you know, there has to be more than that. There has to be a link between the condition and someone's ability to formulate the requisite mens rea. And that link was also lacking at trial. You know, there's nothing connecting anything, be it the defendant's use of marijuana and mushrooms, or this condition that may or may not have happened, but he talks about it in his debrief with the FBI. There's still no link connecting that. I guess, sorry, if I understood it right, though, it's not that he really had no heart, and so that was the purpose, that was the cause of the diminished capacity. It's that him saying he has no heart is evidence of diminished capacity. Again, I don't see it that way. I understand what your Honor is  I think that's what, so is your argument that that theory was forfeited? That theory wasn't raised. It wasn't argued at all at the trial level, so yes. But even if it was argued, I mean, I don't, still, you don't have that link. You know, there's the cases that are cited, there's someone who could have mental illness. And if you don't have some testimony, it doesn't have to be an expert, just something that says, like, because I have this  I don't want to speculate the requisite intent. You know, that's what's necessary, and that's what's lacking here. Okay, thank you. We've gone way over. So thank you for your argument. Let's put 4 minutes on the clock for rebuttal, please.  There are 3 points I wanted to make. First of all, in regards to the finding of wilfulness, it was the district court who said as an afterthought about all this other evidence to  So that was an independent finding. Number 2, in regards to the substantial disruption of governmental functions or services, the disruption, you would look at the target because in the United States versus Snipe's case that the disruption was what the National Guard had to do in dealing with that threat. Now, the case before that, which is the N-War case on page 11 of my reply brief, it sort of does say that the target is the disruption, whereas the substantial relates to what does the government have to do or security personnel have to do in order for it to be substantial. The third thing that I wanted to mention is that as far as the diminished capacity instruction, if the court were to find that there was sufficient evidence to at least warrant the giving of the diminished capacity instruction, that would be the only option available. According to the court's Christian case, which was not overruled by the Bacon en banc in regards to the issue with the holding regarding ‑‑ Sorry, can I interrupt you though? I understand that there was a discussion about whether the mushrooms, whether the drug use caused diminished capacity and the court found there wasn't evidence that it affected the ability to form an intent. And then you came in this morning and started with this thing about a heart. And the government is saying no one ever argued that the statement about the heart showed diminished capacity. Do you think that anyone ever did argue that to the court? I would agree with Mr. Aquino that the defense counsel did not argue that when there was an issue regarding the diminished capacity. However, the test is whether there was sufficient evidence to warrant the giving of the diminished capacity instruction even though it may have been weak, contradictory or of doubtful credibility. Now, the argument regarding whether he didn't have a heart and there was brain surgery, that was already evidence that was introduced. So the district court, it was incumbent also on the district court to take all of that into account in addition to what the defense counsel argued. And even if you were to, let's say, exclude that part, there was sufficient evidence, although it may have been weak or inconsistent or of doubtful credibility, that there was a diminished capacity because Mr. Brandenburg did testify to that effect. The marijuana and the mushroom that he was taking did affect his thinking because there is a difference between what his thinking was and what he did. And he testified to that. Also, he did testify that, yes, he was spun out of control during the period of time this happened because there was also his divorce that was happening. So when you take all of those things together, there was some evidence, some evidence that the diminished capacity instruction should have been given and, therefore, a new trial is required. Are there any questions? If not, my time is over. Thank you, both sides, for the helpful arguments. This case is submitted and we are adjourned.  This court for this session stands adjourned.
judges: McKEOWN, FRIEDLAND, SUNG